

**Lawrence M. Pearson**
lpearson@wigdorlaw.com

March 17, 2021

**VIA ECF**

The Honorable Edgardo Ramos
United States District Court, Southern District of New York
40 Foley Square
New York, New York 10007

      Re:     Liz v. Foundation for a Smoke-Free World, Inc.; No. 21-cv-00281 (ER)

Dear Judge Ramos:

We represent Plaintiff Lourdes Liz ("Plaintiff") and write in opposition to Defendant Foundation for a Smoke-Free World, Inc.'s (the "Foundation" or "Defendant") request for a pre-motion conference regarding its proposed motion to dismiss Plaintiff's Complaint (see Dkt. No. 7). For the reasons set forth below, the motion is without merit and futile.

**I.**     **The Foundation's Reading of the Taxpayer First Act Is Erroneous**

Ms. Liz brings claims under the Taxpayer First Act, 26 U.S.C. § 7623(d)(1)(A) ("TFA"), New York Labor Law ("NYLL") § 740, and New York's Non-Profit Corporation Law ("NPCL") § 715-d because she was unlawfully retaliated against by her former employer, the Foundation, for protected activity. Ms. Liz complained about the Foundation's fraudulent and improper self-designation as a tax-exempt non-profit organization, as well as its activities endangering public health through its promotion of e-cigarette use as a supposedly safe alternative to smoking for teens (when they legally should not be doing either), and the Foundation's improper connections and dealings with for-profit Big Tobacco companies that promulgated the lie to the Foundation being an independent organization working to eradicate smoking and the use of tobacco products.

The Foundation's reading of the TFA is erroneous and selective. The Foundation claims the TFA somehow protects employees who engage in protected activity *only* when an investigation into improper tax-related conduct is underway. This is not only a strained interpretation that would effectively grant an employer free rein to retaliate up until when an investigation is launched, but it also contradicts the plain text of the statute. The TFA protects employees who either "provide information, cause information to be provided, *or* otherwise assist in an investigation" concerning tax fraud or violation of tax laws. TFA, 26 U.S.C. § 7623(d)(1)(A) (emphasis added). The employee must reasonably believe that the complained-of conduct "constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud," when "the information or assistance is provided to" enumerated Federal agencies *or* to "a person with supervisory



authority over the employee, or any other person working for the employer who has the authority to investigate, discover, or terminate misconduct." Id. Ms. Liz did this—she complained to top management and her supervisors about activities she believed violated or vitiated the Foundation's non-profit status for tax purposes.

The TFA plainly protects employees who *either* provide information *or* assist in an investigation concerning alleged tax violations/fraud, whether to the government or to a supervisor/other person at the employer who can "investigate, discover, or terminate" the wrongful conduct. An employer's failure to launch an "investigation" into unlawful practices does not deny protection under the TFA (factually, it would suggest retaliatory animus). As alleged, Ms. Liz made specific complaints about activities that violated the Foundation's tax status to supervisors and/or others at the Foundation, and then paid the price for her efforts. By way of example only:

- o In or around March 2018, Ms. Liz complained to Tom Harding, Chief Operating Officer, about how the Foundation's proposed use of social media influencers engaging in vaping tricks in an advertising campaign would promote consumption of e-cigarettes among teenagers, which she made clear would harm public health and safety, and also was contrary to the Foundation's publicly professed *non-profit mission*. Complaint at ¶ 53. In the spring of 2018, Ms. Liz also raised concerns about involvement by the Foundation with an agricultural initiative sponsored by Philip Morris in Malawi. Id. at ¶¶ 57-59, 74.

- o In or around late August 2018, Ms. Liz was highly concerned by and later raised concerns regarding the Foundation's efforts to align itself and its messaging with Big Tobacco corporations by propagating a pro-vaping message aimed at teens under the thin pretext of a "harm reduction" discussion, and specifically objected to how the Foundation's President, Derek Yach, coming directly off a meeting with Altria, emphasized the aim of "correct[ing] the misperceptions" about nicotine dependence being harmful, and used advertising company Ogilvy to do so. Id. at ¶¶ 63-71. Ms. Liz complained about the Foundation's fraudulent activities and collusion with Big Tobacco with her direct manager, Mica Wilson, and to Mr. Harding, who downplayed her concerns. Id. at ¶ 68.

Ms. Liz alleges that as a direct result of these and other protected activities detailed in her Complaint, she was retaliated against, including by being passed over for a promotion in late 2018, and then by having her responsibilities stripped away and being issued baseless warnings throughout 2019, until she ultimately was terminated in January 2020. Ms. Liz has alleged in detail that she objected to and provided information about apparent legal violations of tax rules to supervisors and others at the Foundation, and that her employer then quickly retaliated against her. She has pleaded a viable TFA whistleblower retaliation claim.[1]

---

[1] The Foundation's reference to cases concerning False Claims Act ("FCA") retaliation claims is unavailing because the FCA, unlike the TFA, requires that the protected activity be "*in furtherance of* an action under [the FCA]." 31 U.S.C. § 3730 (h). Courts have narrowly defined conduct that is protected under the FCA. See Adiram v. Catholic Guardian Svcs., No. 13 Civ. 6235 (SLT)(JO), 2015 WL 5706935, at *3 (E.D.N.Y. Sept. 23, 2015) (the "in furtherance



## II. Ms. Liz Has Sufficiently Pleaded Claims Under NYLL § 740 and NPCL § 715-d

NYLL § 740 prohibits retaliation against an employee for "disclos[ing], or threaten[ing] to disclose … an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." Here, Ms. Liz has alleged, in substantial detail, how she repeatedly objected to the Foundation's efforts to promote vaping/e-cigarette use among teenagers and adolescents, which is an activity prohibited by law and which unquestionably has a harmful impact on public health and safety. See, e.g., Complaint at ¶¶ 53, 60, 62, 75, 99, 103. Ms. Liz did not merely *disagree* with the Foundation's strategy. She objected to improper efforts to promote the use and/or downplay the health risks of e-cigarettes to teenagers and adolescents not legally old enough to use them in New York and many other states. As Ms. Liz was then retaliated against for engaging in this protected activity, she has more than plausibly alleged a viable NYLL § 740 claim.[2]

NPCL § 715-d is "intended to protect … employees [of a non-profit organization] who in good faith report any action or suspected action taken by or within the corporation that is illegal, fraudulent, or in violation of adopted policy of the corporation from retaliation or adverse employment consequences." Ferris v. Lustgarten Foundation, 189 A.D.3d 1002 (N.Y. 2d Dep't 2020) (holding that NPCL § 715-d "creates an implied private right of action for employees who are retaliated against or subject to adverse employment consequences as a result of whistleblowing activities"). As referenced above and set forth in Ms. Liz's Complaint, Ms. Liz repeatedly complained about the non-profit Foundation's activities that suggested the Foundation was violating its legal requirements and obligations as a tax-exempt, non-profit organization, including by coordinating with for-profit corporations, promoting vaping among teenagers, and engaging in activities designed to increase the profits and do the bidding of for-profit Big Tobacco corporations. See, e.g., Complaint at ¶¶ 53, 59, 60, 62, 64, 68, 75, 78, 99, 103, 104. Ms. Liz alleges that she paid for her protected complaints with her job. Ms. Liz's NPCL § 715-d claim is well-supported.[3]

The Foundation's proposed motion to dismiss would be futile, as Ms. Liz has more than sufficiently alleged claims meeting the pleading requirements.

---

of" FCA language requires that "a plaintiff must demonstrate that her activities 'were directed at exposing a fraud upon the government.'") (citations omitted); Moor-Janowski v. Bd. of Trustees of NYU, No. 96 Civ. 5997 (JFK), 1998 WL 474-84, at *10 (S.D.N.Y. Aug. 10, 1998) ("protection is available not only where a false claims action is actually filed, … but also where the filing was 'a distinct possibility' at the time the assistance was rendered") (citations omitted).

[2] Tonra v. Kadmon Holdings, Inc., 405 F.Supp.3d 576 (S.D.N.Y. 2019), cited by the Foundation, is distinguishable as the court dismissed NYLL § 740 claims as it was found the plaintiff "had no reasonable belief" that a drug undergoing clinical trials "posed risks that would require a safety report or amendment." Id. at 588. Here, Ms. Liz repeatedly objected to the Foundation's efforts to promote to children and minors that vaping and consumption of e-cigarettes was safe, which squarely posed a risk of harm to the public's health and safety.

[3] Joshi v. Trustees of Columbia Univ., No. 17 Civ. 4412 (JGK), 2021 WL 236032, at *18 (S.D.N.Y. Jan. 25, 2021) is not instructive, as this was a summary judgment decision where the court determined, based on a full factual record, that the defendant had not retaliated against the plaintiff.



We thank the Court for its time and consideration to this matter.

Respectfully submitted,

Lawrence M. Pearson