UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LOURDES LIZ                                        1:21-cv-00281-(ER) (JLC)

                        Plaintiff,

     -against-

FOUNDATION FOR A SMOKE-FREE
WORLD, INC.

                        Defendant.
-----------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF
## FOUNDATION FOR A SMOKE-FREE WORLD, INC.'S MOTION TO DISMISS THE COMPLAINT

---

KAUFMAN BORGEEST & RYAN LLP
*Attorneys for Defendant*
**FOUNDATION FOR A**
**SMOKE-FREE WORLD, INC.**
120 Broadway, 14th Floor
New York, NY 10271
(212)994-6517
jgilbride@kbrlaw.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................ 1

PROCEDURAL HISTORY.................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

STANDARD OF REVIEW .................................................................................................... 6

POINT I
   DISMISSAL IS WARRANTED BECAUSE THE COMPLAINT FAILS TO STATE ANY
   VIABLE FEDERAL CLAIMS AGAINST THE FOUNDATION........................................... 7

     A.   Plaintiff fails to state a claim under the TFA because she does not allege that she
          complained of a tax law violation in the context of an investigation ........................... 8

     B.   Plaintiff fails to state a claim under the TFA because she does not plausibly allege
          any tax law violations. ................................................................................................. 9

POINT II
   PLAINTIFF'S STATE LAW CLAIMS ALSO SHOULD BE DISMISSED .......................... 16

     A.   Plaintiff fails to state a claim under NYLL § 740. ..................................................... 16

     B.   Plaintiff fails to state a claim under NPCL § 715–b. ................................................. 19

CONCLUSION....................................................................................................................... 20

7290705

# TABLE OF AUTHORITIES

**Cases**

*Adiram v. Catholic Guardian Services* No. 13-CV-6235 SLT JO, 2015 WL 5706935 (E.D.N.Y. Sept. 28, 2015). ................................................................................................................ 13, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 6

*Barker v. Peconic Landing at Southold, Inc.*, 885 F. Supp. 2d 564 (E.D.N.Y. 2012) ................ 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 6, 14

*Bordell v. General Elec. Co.*, 88 N.Y.2d 869 (1996) .................................................. 17

*Calabro v. Nassau Univ. Med. Ctr.*, 424 F. Supp. 2d 465 (E.D.N.Y. 2006) .............................. 19

*Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988) ......................................... 16

*Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256 (S.D.N.Y. 2001) ........................... 17

*Cotrone v. Consol. Edison Co. of New York*, 50 A.D.3d 354 (1st Dept. 2008) ..................... 17, 18

*Ferris v. Lustgarten Found.*, 189 A.D.3d 1002 (2d Dept. 2020) ................................... 20

*Finkelstein v. Cornell Univ. Med. College*, 269 A.D.2d 114 (1st Dept. 2000) ............................ 18

*Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009) ...................................................... 6

*Hyung Jin Moon v. Hak Ja Han Moon*, 431 F. Supp. 3d 394 (S.D.N.Y. 2019) .......................... 20

*Khan v. State Univ. of New York Health Science Ctr. At Brooklyn*, 288 A.D.2d 350, 734 N.Y.S.2d 92 (2d Dept. 2001) ............................................................................... 17

*Luciano v. City of New York*, 684 F.Supp.2d 417 (S.D.N.Y. 2010) ........................................ 16

*Moon v. Moon*, 833 F. App'x 876 (2d Cir. 2020) ...................................................... 19

*Moor-Jankowski v. Bd. of Trustees of New York Univ.*, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998) ................................................................................. 14, 15

ii

*Nadkarni v. N. Shore-Long Island Jewish Health Sys.*, 21 A.D.3d 354 (2d Dept. 2005)............. 18

*Peace v. KRNH, Inc.*, 12 A.D.3d 914 (3rd Dept. 2004)........................................................ 17, 19

*Rodgers v. Lenox Hill Hosp.*, 211 A.D.2d 248 (1st Dept. 1995) .................................................. 18

*Semeraro v. Woodner Co.*, No. 17 CIV. 8535 (ER), 2018 WL 3222542
    (S.D.N.Y. July 2, 2018)................................................................................................ 17, 19

*Starikov v. Ceva Freight, LLC*, 153 A.D.3d 1377 (2d Dept. 2017)............................................ 16

*Williams v. Taylor*, 529 U.S. 362 (2000). .................................................................................... 9

## Statutes

26 U.S.C. § 7623(d)(1)(A) ................................................................................... 1,5,7,8,9

26 U.S.C. § 7623(d)(1)(B) ............................................................................................. 9

26 U.S.C. § 501(c)(3)............................................................................................. 2,8,9,10,12

28 U.S.C. § 1367(c)(3).................................................................................................. 16

31 U.S.C. § 3729 ......................................................................................................... 13

31 U.S.C. § 3730(h)(1) ................................................................................................ 13

NPCL § 715-b ........................................................................................................ 1,6,19,20

NYLL § 740(2)(a) .................................................................................................. 1,16,17,18,19

Pub. L. No. 116-25, 133 Stat. 981 (July 1, 2019) ........................................................ 7

7290705

## PRELIMINARY STATEMENT

As a famous playwright might have noted, the Complaint in this action is replete with sound and fury signifying nothing.[1]  Relying on vague innuendo and sensationalistic assertions, Plaintiff Lourdes Liz ("plaintiff" or "Ms. Liz") alleges that her termination from Foundation for a Smoke-Free World, Inc. (the "Foundation" or "defendant") was in violation of the Taxpayer First Act, 26 U.S.C. § 7623(d)(1)(A) ("TFA"), New York Labor Law ("NYLL") § 740, and New York Not-for-Profit Corporation Law ("NPCL") § 715-b.  In her Complaint, plaintiff offers the conclusory assertion that Foundation retaliated against her, including by terminating her employment, because she made complaints to other Foundation staff regarding, *inter alia*, the Foundation's alleged pro-teen vaping and e-cigarette use stance (a position it completely opposes).  Plaintiff's attempt to ignore the truth (including her well-documented history of poor job performance) and smear the Foundation with below the belt allegations and inferences should not be countenanced.  The Complaint should be dismissed it its entirety.

## PROCEDURAL HISTORY

Ms. Liz filed a charge with the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") on or about June 10, 2020 (**Exhibit "A"** to the Declaration of Joan M. Gilbride dated May 5, 2021).   OSHA dismissed her charge in a ruling dated September 4, 2020 (**Exhibit "B"** to Gilbride Decl.).[2]  This action was commenced by the filing of a summons and complaint with the office of the Clerk of the United Stated District Court for the Southern District of New York on or about January 13, 2021 (**Exhibit "C"** to Gilbride

---

[1]  *See* William Shakespeare, *Macbeth*, Act 5, Sc. 5.

[2]  This Court may consider plaintiff's OSHA charge and the OSHA dismissal letter as documents incorporated by reference in the Complaint (*see* Complaint, ¶ 24-25).  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010); *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002).

1

Decl.).  By correspondence dated March 12, 2021, defendant requested a pre-motion conference for leave to file this motion to dismiss.  Following a pre-motion conference held before the Honorable Edgardo Ramos on April 14, 2021, the  District Court granted defendant permission to submit its motion on or before May 5, 2021.

## <u>STATEMENT OF FACTS</u>[3]

The Foundation for a Smoke-Free World, Inc. is an independent nonprofit private foundation recognized by the Internal Revenue Service as exempt from federal income tax under Internal Revenue Code § 501(c)(3) (*see* Exhibit C: ¶ 29).  The Foundation's mission is to improve global health by ending smoking in this generation and it is committed to reducing death and disease caused by cigarette smoking (*see* Exhibit C: ¶ 3, 29, 39, 40).  As a private foundation, the Foundation is and always has been fully transparent about the fact that it is funded by charitable gifts from PMI Global Services Inc. (*see* Exhibit C: ¶ 3, 45).

Despite this transparency, the Complaint tries to use its funding source against the Foundation, distract from its mission and good work, and smear its name by baselessly asserting that the Foundation was "do[ing] the bidding of . . . the tobacco industry" and "seeking to promote vaping among teenagers" and therefore "was violating its legal requirements and obligations as a tax-exempt, non-profit organization" (*see* Exhibit C: ¶ 1, 2).

According to the Complaint, the Foundation hired plaintiff as "Director, Digital and Social Media" in February 2018 (Exhibit C: ¶ 34).  Plaintiff alleges that "in or around late February or early March 2018" she complained to the Foundation's Chief Operating Officer

---

[3]     The references to facts in plaintiff's Complaint are deemed to be true solely for the purposes of this motion.

("COO") that she disagreed with a proposed advertising campaign involving "Instagram influencers and personalities who performed vaping and e-cigarette related tricks" on the basis that it would promote vaping among teenagers (Exhibit C: ¶ 48-53). Plaintiff further alleges that "in Spring 2018" she "noticed that PMI had published a sustainability report documenting its efforts in Malawi aimed at encouraging the diversification of crops beyond tobacco" and that the report "sounded identical to the Foundation's own 'Agricultural Transformation Initiative'" (Exhibit C: ¶ 57). Plaintiff alleges that she complained to the COO that this was a "blatant example of the Foundation's collusion with the tobacco industry, in contravention of its purportedly independent, non-profit tax-exempt status" (Exhibit C: ¶ 57, 59).

Plaintiff further alleges that in "the summer of 2018" she "raised concerns" with the COO about the Foundation sponsoring the "Conrad Challenge, run by the Conrad Foundation, which is an organization that supports a children's STEM-based education initiative, in connection with smoke-free challenges in certain target markets" (Exhibit C: ¶ 60). Plaintiff's "concerns" allegedly arose from the fact that "the Foundation planned to fly the . . . contest winners to Catania, Italy to visit the Foundation's Centre of Excellence there" and the Founder and Director of the Centre of Excellence "had previously accepted a €1 million grant from PMI to investigate PMI's heated tobacco products" (Exhibit C: ¶ 61).

Plaintiff further alleges that, in "late August 2018," Derek Yach, President of the Foundation, stated to her in an email: "Note that in our Altria meet[ing,] they stressed the high value of the poll and our efforts to correct the misperceptions – suggesting we can go even further with Ogilvy" (Exhibit C: ¶ 36, 64) (alteration in original). Altria Group, Inc. ("Altria") is a producer of tobacco and related products (Exhibit C: ¶ 2). Ogilvy is an advertising firm (Exhibit C: ¶ 7). Plaintiff alleges that she viewed Dr. Yach's reference to a meeting with Altria

3

as "coordination and collusion between the Foundation and key players in the tobacco industry" and evidence that the Foundation was "shamelessly looking to do Altria's bidding" (Exhibit C: ¶ 67, 72).  Plaintiff alleges that she raised her "collusion" concerns with her manager, the Director of Scientific Communications, and with the COO (Exhibit C: ¶ 68).

Plaintiff also alleges that she "raised concerns" in late October 2018 because "the Foundation directed her to attend a teen marketing conference, as well as a meeting with an organization called DoSomething.org, a non-profit aimed at motivating youth to make positive social changes" (Exhibit C: ¶ 75).  Plaintiff stated that she could see no other "rationale" for the Foundation's participation other than to make the Foundation "visible to teenagers" and promote teenage e-cigarette use (Exhibit C: ¶ 76-77).  The Complaint does not specify to whom plaintiff raised these alleged concerns.

Despite her purported concerns, the Complaint does not allege any actions that plaintiff took to bring about a cultural change within the Foundation, or any efforts she took to find a new job.  In fact, plaintiff alleges that in the fall of 2018, she sought to further entrench herself within the Foundation's management and value system – with which she allegedly disagreed – by interviewing for a promotion to the open position of Vice President (Exhibit C: ¶ 81-82).

Plaintiff did not receive the promotion; rather, the position was given to Nicole Bradley, who then was the Foundation's Communications Manager (Exhibit C: ¶ 81, 84).  Plaintiff alleges that she was not selected for the Vice President position in retaliation for her complaints "about the Foundation's actions demonstrating its lack of independence from, and efforts to disseminate, a pro-tobacco industry and pro-vaping message to teens" (Exhibit C: ¶ 85).

4

After plaintiff was passed over for the promotion, she acknowledges that she began to experience job performance problems (*see* Exhibit C: ¶ 86-94).  Plaintiff tries to pass off these performance issues as the Foundation's fault and characterizes them as the Foundation "beg[inning] to marginalize and sideline [her], while subjecting her to baseless and retaliatory performance warnings and write-ups" (Exhibit C: ¶ 86).  Plaintiff alleges that her job responsibilities were reduced and, in February 2019, she was issued a "Performance Memorandum" based on her "workplace demeanor," as well as a "Performance Warning" in October 2019 (Exhibit C: ¶ 88, 91, 94).  Plaintiff alleges that these actions were in retaliation for her complaints about the Foundation "promoting a pro-tobacco industry agenda and pushing a pro-vaping message at teens" (Exhibit C: ¶ 95).

Finally, plaintiff alleges that, during a November 2019 meeting regarding an upcoming World Health Organization ("WHO") conference, she "challenged" the suggestion that the Foundation "publicly advocate an 'Under 18 – No Vaping' strategy" because, in her opinion, the Foundation should take a "'No Vaping Until 21' position" (Exhibit C: ¶ 98-99).  Plaintiff alleges that, after this meeting, she was no longer included in discussions about the WHO conference (Exhibit C: ¶ 101).  Plaintiff alleges that this was retaliation for her objections to the Foundation's "efforts to do the tobacco industry's bidding by downplaying the dangers of and muddy the waters concerning teenage vaping" (Exhibit C: ¶ 102).  Plaintiff alleges that her employment was terminated "without substantive explanation" on February 27, 2020, following the Foundation's "campaign of unlawful retaliation against her" (Exhibit C: ¶ 21, 104).

Even assuming, *arguendo*, that plaintiff's baseless allegations were true, plaintiff has failed to state any viable federal or state law claims upon which relief can be granted.  Plaintiff's cause of action for violation of the Taxpayer First Act, 26 U.S.C. § 7623(d)(1)(A), should be

7290705

dismissed because she does not allege that she made complaints in the context of an investigation, complained about any tax law violations, or otherwise participated in a protected activity under that Act. Plaintiff likewise fails to state a claim as to her state law causes of action pursuant to NYLL § 740 and NPCL § 715-b. Accordingly, the instant motion to dismiss should be granted in all respects.

## STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To survive such a motion, a plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (2009). A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007). Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570 (2007).

6

## POINT I

## DISMISSAL IS WARRANTED BECAUSE THE COMPLAINT FAILS TO STATE ANY VIABLE FEDERAL CLAIMS AGAINST THE FOUNDATION.

The Taxpayer First Act ("TFA") was signed into law on July 1, 2019. *See* Pub. L. No. 116-25, 133 Stat. 981 (July 1, 2019). The purpose of the TFA, as stated in its caption, was "[t]o amend the Internal Revenue Code of 1986 to modernize and improve the Internal Revenue Service." *Id.* Indeed, the TFA is comprised of provisions aimed at improving the experiences of taxpayers interacting with the IRS and optimizing the IRS for the 21st century. *See, e.g.*, Pub.L. 116-25, Title I, § 1101 ("Comprehensive Customer Service Strategy"); Pub.L. 116-25, Title II ("21st Century IRS"). To that end, § 1405 of the TFA, entitled "Whistleblower Reforms" added a new subsection to 26 U.S.C. § 7623 regarding "Anti-Retaliation Whistleblower Protection for Employees." Pursuant to the newly-added 26 U.S.C. § 7623(d)(1):

> No employer . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee . . . in reprisal for any lawful act done by the employee - -
>
> (A)  to provide information, cause information to be provided, or otherwise assist in an investigation regarding underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud, when the information or assistance is provided to the Internal Revenue Service, the Secretary of the Treasury, the Treasury Inspector General for Tax Administration, the Comptroller General of the United States, the Department of Justice, the United States Congress, a person with supervisory authority over the employee, or any other person working for the employer who has the authority to investigate, discover, or terminate misconduct, or
>
> (B)  to testify, participate in, or otherwise assist in any administrative or judicial action taken by the Internal Revenue Service relating to an alleged underpayment of tax or any violation

7

of the internal revenue laws or any provision of Federal law relating to tax fraud.

26 U.S.C. § 7623(d)(1).

**A.     Plaintiff fails to state a claim under the TFA because she does not allege that she complained of a tax law violation in the context of an investigation.**

Plaintiff claims to be entitled to recovery under to the TFA because she purportedly made "protected complaints" to the Foundation concerning, *inter alia*, "false representations, violations of its non-profit/tax-exempt obligations, tax fraud, and, in particular, Defendant's fraudulent misappropriation of tax-exempt, non-profit status pursuant to IRC Section 501(c)(3)" (Exhibit C: ¶ 106).   The clear language of the TFA's anti-retaliation provision, however, unequivocally states that it was enacted to protect employees who take action towards exposing a violation of the internal revenue laws or federal law relating to tax fraud **in the context of an investigation**.   By its own explicit terms, the TFA protects employees who "provide information, cause information to be provided, **or otherwise assist in an investigation** regarding underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud . . . ." 26 U.S.C. § 7623(d)(1)(A).   Because the Complaint lacks any allegation that plaintiff participated in a tax law investigation, plaintiff's claim brought under the TFA should be dismissed for failure to state a claim.

The use of the word "otherwise" in 26 U.S.C. § 7623(d)(1)(A) establishes that the anti-retaliation provision of the TFA is limited to the context of investigations.   If the provision was meant to protect employees who "provide information" or "cause information to be provided" in any context, those items would not be followed by the phrase "**or otherwise assist** in an

8

investigation." This phrasing makes absolutely clear that the TFA's anti-retaliation provision applies only to employees who "provide information [in an investigation], cause information to be provided [in an investigation], or otherwise assist in an investigation" regarding tax law violations. *See* 26 U.S.C. § 7623(d)(1)(A). Any argument to the contrary would render the word "otherwise" mere surplusage and run afoul of the "cardinal principle of statutory construction that [a court] must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000).[4]

**B.    Plaintiff fails to state a claim under the TFA because she does not plausibly allege any tax law violations.**

Plaintiff also fails to state a claim under the TFA because the Complaint does not allege that the Foundation actually violated any tax laws. The Foundation is an independent private foundation, recognized by the Internal Revenue Service as exempt from federal income tax under §501(c)(3) (*see* Exhibit C: ¶ 29). Pursuant to I.R.C. § 501(c)(3), the following organizations may be exempt from taxation:

> Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation . . . and which does not participate in, or intervene in . . . any political campaign on behalf of (or in opposition to) any candidate for public office.

---

[4]    The language in 26 U.S.C. § 7623(d)(1)(B) lends further support to the position that the statute relates exclusively to an investigatory context, as it, too, by its terms, focuses exclusively on administrative or judicial actions.

26 U.S.C. § 501(c)(3).

The Complaint does not assert even in conclusory fashion, let alone any facts, that would constitute taxable expenditures or other tax law violations that plaintiff purportedly complained about. Instead, plaintiff generally alleges that she objected and complained that the Foundation "through its hand-in-glove coordination with companies seeking to promote vaping among teenagers, was violating its legal requirements and obligations as a tax-exempt, non-profit organization" (Exhibit C: ¶ 1). Even taking as true the conclusory (and utterly baseless) allegations in the Complaint, plaintiff does not allege any tax law violations, as she would have to do to adequately state a claim under the TFA.

As an initial matter, despite plaintiff's attempt to create negative sentiment around the Foundation's funding, it is not a tax law violation for Foundation to accept charitable gifts from PMI Global Services. Indeed, the Foundation has always been fully transparent regarding its funding (*see* Exhibit C: ¶ 2, 3, 45).

Likewise, none of plaintiff's alleged specific complaints during her time at the Foundation concerned violations of tax laws. For example, plaintiff alleges that she raised a complaint regarding her observation that "PMI had published a sustainability report documenting its efforts in Malawi aimed at encouraging the diversification of crops beyond tobacco" that "sounded identical to the Foundation's own 'Agricultural Transformation Initiative'" (Exhibit C: ¶ 57). Plaintiff alleges that she complained to the Foundation's COO that this was a "blatant example of the Foundation's collusion with the tobacco industry, in contravention of its purportedly independent, non-profit tax-exempt status" (Exhibit C: ¶ 57, 59). Plaintiff provides no factual support for the illogical leap from engagement in similar activities to a baseless and

conclusory charge of "collusion." Further, even assuming that the PMI publication "sounded identical" to a Foundation initiative, and further assuming that this did not result from a coincidence and instead resulted from communication between the Foundation and PMI, plaintiff fails to point to any laws barring communications between the Foundation and any other entity, including its funder or a stakeholder in the industry in which it exists. This is especially true if the communication were in furtherance of the Foundation's mission. To that end, plaintiff's alleged complaint that Dr. Yach's meeting with Altria demonstrated "collusion" with the tobacco industry (*see* Exhibit C: ¶ 64, 67-68, 72) similarly relies on plaintiff's opinion that such communications with diverse stakeholders in the tobacco industry are unseemly, as opposed to violations of tax law.

Plaintiff further alleges that she complained about the Foundation's involvement in the "Conrad Challenge, run by the Conrad Foundation, which is an organization that supports a children's STEM-based education initiative" (Exhibit C: ¶ 60). It is puzzling why plaintiff would object to this involvement and how she would arrive at the curious conclusion that the Conrad Foundation promotes teen vaping. Similarly confusing is plaintiff's allegation that she "raised concerns" because "the Foundation directed her to attend a teen marketing conference, as well as a meeting with an organization called DoSomething.org, a non-profit aimed at motivating youth to make positive social changes" (Exhibit C: ¶ 75). Plaintiff's objection to the Foundation's involvement with these organizations was based on her perplexing conclusion that such involvement would promote teenage e-cigarette use (*see* Exhibit C: ¶ 76-77). Regardless, plaintiff wholly fails to allege facts to support the conclusion she hopes the Court will draw that the Foundation's grant to the Conrad Challenge or meeting with a representative from DoSomething.org violated a tax law. Likewise, plaintiff fails to allege facts to support her claim

7290705

of tax law violations based on an advertising campaign involving "Instagram influencers," which the Foundation **did not pursue**, relying instead on the *non sequitur* that the Influencers "performed vaping and e-cigarette related tricks" (*see* Exhibit C: ¶ 48, 53).

Plaintiff's final alleged "complaint" was her suggestion during a meeting regarding an upcoming WHO conference that the Foundation should take a "'No Vaping Until 21' position" rather than "Under 18 – No Vaping' strategy" (Exhibit C: ¶ 98-99). Plaintiff alleges that her suggestion was based on her belief that the age restriction for vaping should be in line with United States alcohol laws (*see* Exhibit C: ¶ 100). In this instance, plaintiff fails to even allege that she also complained that taking a "Under 18 – No Vaping' strategy" at a WHO conference would jeopardize the Foundation's tax-exempt status.

In sum, plaintiff wants the Court to conclude that the Foundation's supposed "collusion" with the tobacco industry somehow violated its legal obligations as a tax-exempt corporation. However, plaintiff does not any place in the Complaint allege that while she was an employee she complained of conduct that violated tax laws or threatened the Foundation's tax-exempt status. Plaintiff does not, for example, even allege that she complained of conduct that would create taxable expenditures for the Foundation under applicable I.R.S. regulations or otherwise call into question its exemption under I.R.C. Section 501(c)(3), such as private benefit transactions or political campaign intervention. Rather, even taking the Complaint as true, plaintiff's alleged complaints stemmed from her purported unease with the Foundation's funding source and its purported pro teen vaping position, as opposed to any tax law violations.

Further, it is abundantly clear from the face of the Complaint that plaintiff's alleged complaints to the Foundation primarily arose from her concerns about the health effects of

12

teenage vaping and e-cigarette use (*see e.g.*, Exhibit C: ¶ 50-51). Plaintiff attempts to characterize her complaints as concern about the Foundation's tax-exempt status in a strained effort to state a claim under the TFA. No reading of the instant Complaint, however, could plausibly support the assertion that plaintiff was, in actuality, concerned about the Foundation's tax status if and when she raised her alleged complaints.

The TFA is a relatively new Act and its anti-retaliation provisions have not yet been interpreted by the Courts. However, cases interpreting a similar whistleblower provision in the False Claims Act, 31 U.S.C. § 3730(h)(1) ("FCA") are instructive. The FCA prohibits the submission of false or fraudulent claims for payment to the United States. 31 U.S.C. § 3729. Pursuant to the so-called "whistleblower" provision of the FCA:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). Courts interpreting the FCA whistleblower provision have held that a plaintiff does not participate in protected activity covered by the FCA where the plaintiff's activities were not motivated by concerns about financial fraud.

For example, in *Adiram v. Catholic Guardian Services*, the plaintiffs were employees of a not-for-profit corporation that provided residential services for people with developmental disabilities. *Adiram,* No. 13-CV-6235 SLT JO, 2015 WL 5706935, at *1 (E.D.N.Y. Sept. 28, 2015). The plaintiffs alleged that they regularly notified their employer of "various health and safety issues along with fraudulent practices," including lack of food for residents, lack of

13

funding for transportation, lack of training and security, and apparent falsification of invoices for payment from the federal and New York State governments. *Id.* When their employer did not take corrective action, the plaintiffs "complained to various oversight organizations, including but not limited to the New York State Justice Center for the Protection of People with Special Needs; the Occupational Health and Safety Administration; the New York State Office of Mental Health; and the Office for Persons with Developmental Disabilities." *Id.* Plaintiffs claimed retaliation by their employer in violation of the FCA.

The District Court held that the employees failed to state a claim under the FCA because they were "apparently motivated by concerns about the health and safety of their residents, not by financial fraud." *Id.* at *3. The Court held that the plaintiffs' allegation in their complaint that the defendant engaged in "the apparent falsification of documents" including the submission of "invoices to the federal and New York State governments for payment for services that were not actually provided to Defendant's residents" was conclusory, and "[b]ecause Plaintiffs' well-pleaded allegations concern only health and safety, and not fraud against the government, Plaintiffs have not 'nudged their claims across the line from conceivable to plausible.'" *Id.* at *5 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Moor-Jankowski v. Bd. of Trustees of New York Univ.*, 1998 WL 474084 (S.D.N.Y. Aug. 10, 1998), the plaintiff was the former director of the Laboratory for Experimental Medicine and Surgery at New York University ("NYU"). *Id.* at *1. The plaintiff complained about an NYU researcher to the United States Department of Agriculture. Specifically, the plaintiff complained that the researcher conducted government-funded experiments on monkeys "under conditions so violative of the [Animal Welfare Act], that these scientific experiments constituted a 'fraud.'" *Id.* at *12. The plaintiff thus argued that the defendants were "wasting

14

$500,000 a year in taxpayer money on that fraudulent research." *Id.* The District Court found, however, that "[t]he Complaint [made] clear that exposing a fraud upon the government within the meaning of the FCA was not [the plaintiff's] motivation in protesting the treatment of the monkeys used in [NYU's] research." *Id.* Rather, the plaintiff's activities were "aimed only at getting NYUMC to bring all research at NYUMC facilities into compliance with the [Animal Welfare Act]." *Id.* Because the complaint lacked any well-pleaded allegations to connect these activities to any financial fraud, the court found that the plaintiff had not pleaded any protected activity. *Id.*

Similarly, here, the allegations in the Complaint, if taken as true, suggest that plaintiff raised concerns, if any, with the Foundation about her unfounded belief that the Foundation was promoting teenage vaping and e-cigarette use. On the other hand, the allegations about purported violations of tax law ring utterly hollow and appear to be included solely in an attempt to find a means to utilize the TFA and forum shop into this Court. Plaintiff has failed to plausibly plead that anything that happened during her tenure at the Foundation had even the closest connection to a tax law violation. Accordingly, even assuming *arguendo* that complaints made outside the context of an investigation are protected by the anti-retaliation provision of the TFA (which they are not as a matter of the plain language of the statute), plaintiff has failed to allege that she participated in a protected activity under the TFA and her claim should be dismissed for failure to state a claim upon which relief can be granted.

7290705

## POINT II
## PLAINTIFF'S STATE LAW CLAIMS ALSO SHOULD BE DISMISSED

Pursuant to 28 U.S.C. § 1367(c)(3), "the District Courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the District Court has dismissed all claims over which it has original jurisdiction." It is respectfully submitted that, upon the dismissal of the plaintiff's non-viable federal claim under the TFA, there is no longer an independent jurisdictional basis for her state law claims. *See Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Luciano v. City of New York*, 684 F.Supp.2d 417 (S.D.N.Y. 2010). Under these circumstances, this Court should decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.

### A.    Plaintiff fails to state a claim under NYLL § 740.

Even if this Court chooses to exercise supplemental jurisdiction, plaintiff's remaining state law claims should nevertheless be dismissed because the plaintiff fails to state any claim upon which relief can be granted. First, plaintiff alleges a cause of action under NYLL § 740:

> [NYLL § 740] creates a cause of action in favor of an employee who has suffered a retaliatory personnel action as a consequence of, *inter alia*, disclosing, or threatening to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or as a consequence of objecting to, or refusing to participate in any such activity, policy or practice in violation of a law, rule or regulation.

16

*Starikov v. Ceva Freight, LLC*, 153 A.D.3d 1377, 1377–78 (2d Dept. 2017) (alterations and quotation marks omitted). "To maintain an action under Section 740, an employee must 'plead and prove that the employer engaged in an activity, policy, or practice that constituted an actual violation of law, rule, or regulation.'" *Barker v. Peconic Landing at Southold, Inc.*, 885 F. Supp. 2d 564, 569 (E.D.N.Y. 2012) (quoting *Khan v. State Univ. of New York Health Science Ctr. At Brooklyn*, 288 A.D.2d 350, 350, 734 N.Y.S.2d 92 (2d Dept. 2001)). "An employee can prevail on a Section 740 claim only if he can prove an actual violation of law—a 'reasonable belief of a possible violation' will not suffice." *Id.* at 570 (quoting *Bordell v. General Elec. Co.*, 88 N.Y.2d 869, 871 (1996)).

Here, plaintiff's alleged "whistleblowing" did not relate to a violation of law, rule or regulation by the Foundation that poses a danger to public health or safety. Rather, plaintiff's alleged complaints were based on her personal (and unfounded) belief that the Foundation's strategies would promote teen vaping. Accordingly, plaintiff has alleged, at most, that she "had a reasonable belief of a possible violation, but no proof of an actual violation" of law. *See Bordell*, 88 N.Y.2d at 871 (1996); *Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 270 (S.D.N.Y. 2001). As such, plaintiff has failed to state a claim pursuant to NYLL § 740.

Plaintiff further fails to state a claim under NYLL § 740 because she does not sufficiently allege that the conduct she complained of "present[ed] a substantial and specific danger to the public health or safety." *See* NYLL § 740(2)(a). "[I]n order to survive a motion to dismiss a plaintiff must evince a certain quantum of dangerous activities that demonstrate 'adverse consequences' and thereby elevate the level of danger to public safety beyond 'mere speculation.'" *Semeraro v. Woodner Co.*, No. 17 CIV. 8535 (ER), 2018 WL 3222542, at *7 (S.D.N.Y. July 2, 2018) (quoting *Cotrone v. Consol. Edison Co. of New York*, 50 A.D.3d 354,

17

354, (1st Dept. 2008)); see also *Peace v. KRNH, Inc.*, 12 A.D.3d 914, 915 (3rd Dept. 2004) (NYLL § 740 "clearly envisions a certain quantum of dangerous activity before its remedies are implicated").

In *Cotrone v. Consol. Edison Co. of New York*, 50 A.D.3d 354 (1st Dept. 2008), for example, the Appellate Division, First Department held that "[a]lthough leaving tanker trucks with hazardous materials unattended on a public street violated 49 CFR 397.5, this violation did not create a substantial and specific danger to the public health or safety" under NYLL § 740. The First Department concluded that "[t]he claim that the violation would present such a risk was improperly based on mere speculation." *Id.* at 354-55.

Similarly, in *Nadkarni v. N. Shore-Long Island Jewish Health Sys.*, 21 A.D.3d 354 (2nd Dept. 2005), the Appellate Division, Second Department held that the plaintiff hospital worker failed to state a claim under NYLL § 740 where she alleged that she "complained and refused to participate in a proposed revised plan seeking to utilize hospital volunteers to assist hospital employees with the service and retrieval of patients' meal trays." *Id.* at 354-55. The Second Department held that the "plaintiff's contention that utilizing volunteers could adversely affect patient health and cause a substantial and specific danger to the public health or safety was no more than speculation." *Id.* at 355.

In contrast, a plaintiff will be deemed to have sufficiently alleged a substantial and specific danger to the public health or safety under NYLL § 740 when the complaint contains well pleaded facts in support of a public health threat. *See Rodgers v. Lenox Hill Hosp.*, 211 A.D.2d 248, 253-54 (1st Dept. 1995) (motion to dismiss denied where paramedics' mistakes and possible concealing of records constituted potentially inherently dangerous practice that might

recur and posed a threat to public health and safety); *Finkelstein v. Cornell Univ. Med. College*, 269 A.D.2d 114, 116 (1st Dept. 2000) (doctor practicing medicine while impaired by a psychiatric disability represented a substantial danger to the public health and safety under NYLL § 740); *Calabro v. Nassau Univ. Med. Ctr.*, 424 F. Supp. 2d 465, 476 (E.D.N.Y. 2006) (plaintiff sufficiently alleged a substantial and specific danger to the public health or safety under NYLL § 740 where plaintiff hospital worker alleged that he complained about "[h]ospital food passing through a loading dock allegedly covered with rodents, toxins, and human waste").

In the instant Complaint, plaintiff has failed to sufficiently allege the "quantum of dangerous activity" necessary to state a claim under NYLL § 740. *See Peace v. KRNH, Inc.*, 12 A.D.3d 914, 915 (3rd Dept. 2004). Plaintiff alleges that she complained about her belief that the Foundation's policies "promot[ed] the vaping of tobacco products to teenagers and adolescents" (Exhibit C: ¶ 112). Plaintiff's subjective and baseless belief that the Foundation's policies somehow promoted teen vaping and could possibly cause some teenagers to take up vaping failed to "elevate the level of danger to public safety beyond mere speculation." *Semeraro v. Woodner Co.*, No. 17 CIV. 8535 (ER), 2018 WL 3222542, at *7 (S.D.N.Y. July 2, 2018) (internal quotation marks omitted). Accordingly, plaintiff has failed to state a claim under NYLL § 740.

**B.      Plaintiff fails to state a claim under NPCL § 715–b.**

Finally, plaintiff alleges violation of the whistleblower policy provision of NPCL § 715–b, which requires certain corporations to "adopt . . .  a whistleblower policy to protect from retaliation persons who report suspected improper conduct." As an initial matter, "[i]t is unclear that there even exists a private right of action under NPCL § 715-b(a)." *Hyung Jin Moon v. Hak*

*Ja Han Moon*, 431 F. Supp. 3d 394, 413 (S.D.N.Y. 2019), *aff'd as modified sub nom. Moon v. Moon*, 833 F. App'x 876 (2d Cir. 2020).   While the Appellate Division, Second Department recently held in *Ferris v. Lustgarten Found.*, 189 A.D.3d 1002 (2d Dept. 2020) that this provision creates an implied private right of action, the New York Court of Appeals has not addressed the issue.

In any event, plaintiff wholly fails to allege that the Foundation failed to "adopt . . .  a whistleblower policy to protect from retaliation persons who report suspected improper conduct" pursuant to NPCL § 715–b (see Exhibit C: ¶ 114-19).   Accordingly, even assuming *arguendo* that a private right of action exists under NPCL § 715–b, plaintiff fails to state a claim.

## **CONCLUSION**

For the all of the foregoing reasons, this motion should be granted in its entirety and the complaint against defendant Foundation for a Smoke-Free World, Inc. should be dismissed.

Dated: New York, New York
        May 5, 2021

                               Yours, etc.,

                               KAUFMAN BORGEEST & RYAN LLP

                               _____

                               By: Joan M. Gilbride
                               *Attorneys for Defendant*
                               **Foundation for a Smoke-Free World, Inc.**
                               120 Broadway, 14th Floor
                               New York, New York 10271
                               (212) 994-6517
                               (212) 980-9291
                               jgilbride@kbrlaw.com